Argued May 6, reversed July 15, petition for rehearing
denied September 4, 1963

## GREEN *v.* BENEFICIAL STANDARD LIFE
## INSURANCE COMPANY

383 P. 2d 770

*Harold A. Fabre,* Pendleton, argued the cause for appellant. On the brief were Fabre & Collins and John W. Smallmon, Pendleton.

*Leeroy O. Ehlers,* Pendleton, argued the cause for respondent. On the brief were Walker & Ehlers, Pendleton.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Beneficial Standard Life Insurance Company, from a judgment which the circuit court entered in favor of the plaintiff, Katherine Jean Green, widow of the deceased insured James Lee Green. The widow was the beneficiary of a life insurance policy that the defendant issued to the deceased October 19, 1959. The judgment is based upon a verdict. The action out of which the challenged judgment arose sought recovery upon the policy of insurance which we just mentioned. The insured died October 29, 1960. The policy had a term of 30 years and provided that upon the insured's death the company would pay the beneficiary the sum of $110 per month for a prescribed period or, in lieu of that form of payment, would pay the beneficiary "the commuted value of the policy" as determined upon the day of payment. In this instance the amount was $27,346. The challenged judgment granted recovery in the sums of $27,346 and an attorney fee.

When the policy was issued, the insured paid a quarterly premium of $27.30. It is agreed that the policy went into effect October 19, 1959, and that it continued in effect until January 19, 1960. It granted a 31 day period of grace. The plaintiff claims that the policy was in effect at the time of her husband's death on October 29, 1960. The defendant alleges that

at the time of the death the policy had lapsed for nonpayment of premiums. The defendant also charged that in his application for the policy the insured had answered falsely a question which inquired whether he intended "to make any aerial flights other than as a passenger on commercial airlines." That defense is based upon the fact that the policy went into effect on October 19, 1959, and October 24 of the same year the insured purchased for his own operation an airplane.

The defendant (appellant) presents three assignments of error. The first challenges the ruling of the circuit court which denied the defendant's motion for an involuntary nonsuit. The second and third are based in part upon instructions that were given and upon others requested by the defendant that were refused.

The policy contained this provision:

"REINSTATEMENT—If default be made in premium payments, this Policy may be reinstated at any time during the income protection period and within five years from date of default provided the Insured shall furnish evidence of insurability satisfactory to the Company, and pay all overdue premiums with interest thereon at 5 per cent per annum compounded annually from date of default. Any reinstatement of this Policy shall not have the effect of extending the income protection period for which this policy was issued."

We will now determine the contentions that underlie the first assignment of error, that is, whether the policy was in effect October 29, 1960, when James Lee Green, the insured, died.

January 19, 1960, a premium of $27.30 became due upon the policy. It was not paid. The complaint con-

cedes that the policy "lapsed for nonpayment of premium on January 19, 1960," but alleges that the policy "was thereafter, to wit, on or about August 11, 1960, reinstated by the defendant."

March 9, 1960, the defendant mailed to the insured a letter stating that his policy had lapsed; the letter was accompanied with a printed form dated March 9, 1960, entitled "Application for Reinstatement" that the insured could use in applying for reinstatement. The insured did not reply to the letter and did not use the application form. In the early part of August 1960 the insured obtained from the defendant's local agent the copy of the Application for Reinstatement dated March 9, 1960, which the agent had received when the original was sent to the insured. August 11, 1960, the insured sent that application to the defendant together with his check in the sum of $27.37. The only entries material to this appeal that were upon the application for reinstatement were (1) the title of the paper "Application for Reinstatement," and (2) these words: "If Box 2, 3, or 4 has been checked, the valuable protection you previously had may be restored by * * *." The term "Box 2, 3, or 4" referred to entries immediately ahead of those words which included the following:

"2. Lapsed.
"3. Cancelled * * *.
"4. Placed on extended term insurance for * * *."

Opposite the word "Lapsed" was a check mark. Continuing, the part of the application which is material to reinstatement reads:

"a. Completing the Application for Reinstatement on the reverse side of this letter and returning it to us with

"b. A minimum payment of $27.37 for 3 months. No interest will be charged if this application is made within 15 days of the date of this notice."

Since the notice (Application for Reinstatement) was dated March 9, 1960, but was not used until about August 11, 1960, and the sum of $27.37 was not remitted to the defendant until that time, the privileges expressed in subparagraph "b" had expired. The insured made the entries upon the reverse side of the application that were requested, but they have no bearing upon this appeal and we mention them no further. The Application for Reinstatement was not accompanied by a letter or other communication, and hence the defendant, upon its receipt, knew only that Green was applying for the reinstatement of his lapsed policy and was tendering $27.37.

August 12, 1960, the defendant wrote a letter to the insured reading:

"It is a pleasure to write that your policy has been approved for reinstatement on the basis of your representations in your application.

"Your payment of $27.37 has been credited and your policy is paid to September 19, 1960.

"Thank you for your cooperation and the opportunity of being again of service to you."

The insured made no reply to that letter and in no way indicated disapproval or non-acquiescence in the letter's statement that "your policy is paid to September 19, 1960."

Upon the check stub to which there had been attached the check for $27.37 which the insured mailed to the defendant he had written "to 11-2-60" which possibly indicates that when writing the check he in-

ferred that the policy's extension would be to November 2, 1960. However, the defendant never saw the check stub and the insured had not stated to anyone that he assumed the policy would be extended to November 2, 1960. The application for reinstatement did not specify the term of reinstatement which the insured expected to receive. It is apparent that upon receipt of the defendant's letter of August 12 stating that the premium that he had sent to the defendant would reinstate his policy only to September 19, 1960, he realized that in the defendant's estimation he was insured only to September 19, 1960.

The question now occurs: are we forced to conclude that the remittance of $27.37 extended the policy three months, that is, to November 11, 1960, or is the appropriate decision that the payment extended the policy only to September 19, 1960, as stated in the defendant's letter from which we quoted. If the remittance of $27.37 extended the policy to November 11, 1960, the plaintiff was entitled to recover, in the absence of some other defense, for the insured died October 29, 1960.

A previous paragraph of this opinion quotes the provision of the policy which governs the manner in which a lapsed policy may be reinstated. It requires among other matters payment of "all overdue premiums with interest thereon at 5 per cent."

When the insured made the payment of $27.37 by his check dated August 2, 1960, premium payments were unpaid since January 19, 1960. It is clear that upon forwarding his application for reinstatement the insured did not comply with the provision of the policy that governed reinstatement and that the defendant disregarded them also when it granted reinstatement. Hence, the plaintiff can claim nothing un-

der that provision. We have also quoted from an Application for Reinstatement which the defendant had sent to Green March 9, 1960, and which limited its availability to a period of 15 days. Green did not embrace it and hence it need be given no further attention.

The assistant actuary of the defendant testified:

"In cases of this type where the insurance is of a term nature * * * we will waive the payment of the premium for periods on a net basis for which actually there was no protection to an extent that our accounting records can be maintained properly. Our standard practice is in this kind of a case, since we provided insurance protection during the thirty-one day grace period, we insist on getting at least one month back premium; and further our records are set up on a specific date, in this case the nineteenth, the initial date being October 19, we apply the premium from the 19th of the month more than a month prior to the actual date of the receipt or of the approval of the reinstatement."

The method thus described granted extension from June 19 to September 19, 1960. In that manner the policy was extended. The insured had not been informed of the method employed by the defendant in determining extensions upon reinstating policies in situations such as his. However, when the insured applied for reinstatement and remitted the premium of $27.37 he must have looked forward to the receipt of a letter from the defendant specifying the manner in which it would apportion his remittance to past unpaid premiums and to future protection. In short, he must have viewed his application for reinstatement as a request to the defendant for what may be termed an offer from it for reinstatement. When he received the defendant's reply, he expressed no disapproval.

We quote the following from 12 Appleman, Insurance Law and Practice, § 1752:

> "Where the insured receives a policy not conforming exactly to the one desired, he may either accept or reject it, but if he desires to reject it he must act within a reasonable time, so that his retention of the policy beyond a reasonable time may be taken as an acceptance of it."

When the defendant dated the extension of the lapsed policy back to June 19 and demanded neither back premiums nor interest upon them for the five months between January 19 and June 19, it waived both premium and interest in so doing.

■ Since the policy had been reinstated, in the defendant's view, for the period June 19 to September 19, 1960, it mailed to the insured on September 9, 1960, a notice entitled "Notice of Life Insurance Payment Due" which stated that a premium would become payable September 19, 1960. October 9, 1960, ten days before the termination of the grace period, another notice was mailed to him which stated that his premium was "past due." November 9, 1960, the defendant, unaware of the insured's death on October 29, 1960, addressed a letter to him which stated that premiums had not been paid, the days of grace had expired and "your policy has lapsed." The course that the defendant pursued in that manner and the insured's acquiescence therein through silence constitutes construction by them of the reinstatement of the policy that was effected through the insured's Application for Reinstatement and the defendant's letter of August 12, 1960. A time tested adage declares that silence gives consent, and we believe that the insured's silence upon receipt of the defendant's letter of August 12 and the notices of September 9 and October 9,

1960, denoted his acquiescence in their contents. See Restatement of the Law, Contracts, §§ 29(a) and 72. In that manner the defendant and the insured placed a practical construction upon the reinstatement. *Kontz v. B. P. John Furniture Corporation,* 167 Or 187, 115 P2d 319.

■ The foregoing shows that the insured requested a reinstatement of his policy for a period which he did not specify. The defendant replied that it would reinstate the policy for a term ending September 19, 1960. The insured, upon the receipt of that information, concurred in it through silence.

If we add to the term which ran to September 19, 1960, the grace period, it would continue the policy until October 20, 1960. Therefore, the policy was not in effect on October 29, 1960, when the insured met his death.

We sustain the first assignment of error. It therefore follows that the judgment of the circuit court must be reversed.

Reversed.

PERRY, J., did not participate in this decision.